# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 22-08V
UNPUBLISHED

| | |
|---|---|
| ELIZABETH CANTRELL,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: March 28, 2025 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, *for Petitioner*.

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, *for Respondent*.

### RULING ON ENTITLEMENT[1]

On January 4, 2022, Elizabeth Cantrell filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 24, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons set forth below, I find Petitioner entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**I.      Relevant Procedural History**

Following the filing of this case, the parties began informal settlement discussions on July 5, 2023, but ultimately concluded that settlement was unlikely. A motion for a ruling on the record and brief in support of damages was thereafter filed on October 30, 20213. Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Pet. Mot."), ECF No. 24. Respondent filed a response and a Rule 4(c) Report on December 8, 2023. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for Ruling on the Record ("Resp."), ECF No. 25. Petitioner filed a reply on December 22, 2023. Petitioner's Reply Brief in Support of Petitioner's Motion for Ruling on the Record and Brief in Support of Damages ("Reply"), ECF No. 27.

The matter is ripe for resolution.

**II.     Petitioner's Medical Records**

On September 24, 2020, Petitioner received a flu vaccine in her left shoulder. Ex. Ex. 1 at 1. She had no prior history of shoulder pain or issues. A little less than three months later (December 15, 2020), she saw her primary care provider for an annual exam. Ex. 4 at 5. She now reported left shoulder pain "since her flu shot a couple months ago." *Id.* She also stated she was working out five days a week and weight training. *Id.* at 5-8.

Almost three more months passed before Petitioner again sought treatment for her shoulder issues. On March 2, 2021, she went to an orthopedist complaining of pain and stiffness in her left shoulder. Ex. 3 at 14. Petitioner reported she received the flu vaccine in September, and "it was a week or 2 later when she started having the pain and stiffness of the shoulder." *Id.* The pain was described as intermittent, but "getting worse", and that it "gets up to about 6/10." *Id.* An examination showed reduced range of motion and positive Hawkins sign. *Id.* Petitioner was diagnosed with adhesive capsulitis and referred to physical therapy. *Id.*

At a follow-up on March 30, 2021, Petitioner reported pain "since September" that was "possibly" related to the flu vaccine. Ex. 3 at 10. Her symptoms had not changed, and a physical exam yielded results similar to the March 2nd examination. *Id.* No other medical records were filed in this matter relevant to the claim.

Petitioner has submitted two sworn declarations in support of her Petition. Ex. 2, 5. In the first, she explained that she felt pain when the vaccine was administered, and "the following day, my shoulder pain continued to increase in intensity." Ex. 2 at 2. She

also described how her injury has affected her daily life. Her second witness statement reiterates the contention that her shoulder pain began the day of her vaccination, which she thought "would go away on its own eventually". Ex. 5 at 2.

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

3

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find

4

that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on December 15, 2020. Ex. 4 at 5. Her doctor noted Petitioner had "left shoulder pain since her flu shot…." *Id.* Thereafter, she linked her shoulder pain to her flu shot. Ex. 3 at 14 (stating her pain started after her flu vaccine); *id.* at 10 (reporting pain "since September" that was possibly related to the flu vaccine).

Petitioner's affidavit corroborates the onset timeline, stating that her pain started when she received the vaccination. Ex. 2 at 2, Ex. 5 at 2. Further, Petitioner stated she delayed seeking treatment because she assumed it would go away. Ex. 5 at 2. It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after.

Respondent argues that Petitioner delayed in seeking treatment, and stated at least once that her pain began one or more weeks post-vaccination (which if true would be inconsistent with the SIRVA onset requirement). Resp. at 4. Further, he contends that witness statement evidence should be given little weight because they were prepared over a year after the events. *Id.* While this record is sparse, a finding of proper onset can be made based on such a record. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner linked her shoulder pain to the September 24, 2019, flu vaccine.

Accordingly, there is preponderant evidence (although just barely) that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on September 24, 2020, in the United States. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). Further, Petitioner suffered the residual effects of her injury for more than six months. Ex. 3 at 10; *see* Section 11(c)(1)(D). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 2 at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master