# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-08V**

| | |
|---|---|
| ELIZABETH CANTRELL,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 22, 2026 |

*David John Carney, Green & Schafle LLC, Philadelphia, PA, for Petitioner.*

*Mitchell Jones, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On January 4, 2022, Elizabeth Cantrell filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 24, 2020. Petition at 1. On March 28, 2025, a ruling on entitlement issued finding Petitioner entitled to compensation. ECF No. 29. Because the parties could not informally resolve the issue of damages, they were ordered to file briefs setting forth their respective arguments.

For the reasons described below, I award **$35,000.00** in damages, representing compensation for actual pain and suffering.

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Relevant Procedural History

After attempts at informal resolution failed, Petitioner filed her Motion for Ruling on the Record and Brief in Support of Damages in October 2023 ("Mot."). ECF No. 24. Petitioner argued that she was entitled to $45,000 for past and future pain and suffering. *Id.* at 25. On December 8, 2023, Respondent filed his Response and Rule 4(c) Report recommending that compensation be denied. ECF No. 25.[3]

On March 28, 2025, a Ruling on Entitlement issued finding Petitioner entitled to compensation. ECF No. 28. ECF No. 29. Respondent was ordered to file his brief on damages, which he did on April 24, 2024. Respondent's Response to Petitioner's Brief in Support of Damages ("Resp."), ECF No. 30. Petitioner filed a reply on April 30, 2025. Petitioner's Reply Brief in Support of Damages ("Reply"), ECF No. 32.

## II. Damages

Petitioner requests an award of $45,000.00 for pain and suffering. Mot. at 24-25; Reply at 12-13. Respondent argues that "a lower amount of pain and suffering than the lowest reasoned pain and suffering awards is warranted here." Resp. at 8.

## III. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award

[3] Respondent did not address Petitioner's arguments regarding damages, asserting that she failed to establish she was entitled to compensation. Respondent's Rule 4(c) Report and Response to Petitioner's Motion for Ruling on the Record, ECF No. 25, at 1 n.1.

for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by a Court of Federal Claims decision several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards – and properly emphasizes the importance in each case of basing damages on the specific injured party's circumstances.

## IV. Prior SIRVA Compensation Within SPU[4]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2025, 4,545 SPU SIRVA cases have resolved since the inception of SPU ten years before. Compensation has been awarded in the vast majority of cases (4,397), with the remaining 148 cases dismissed.

2,506 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation.[5] In only 270 of these cases, however, was the amount of damages determined by a special master in a reasoned decision.[6] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

---

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 1,891 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,206 cases) or stipulation (30 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

| | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated[8] Agreement |
|---|---|---|---|---|
| **Total Cases** | *270* | *2,206* | *30* | *1,891* |
| **Lowest** | $30,000.00 | $5,000.00 | $45,000.00 | $1,500.00 |
| **1st Quartile** | $67,305.16 | $60,000.00 | $90,000.00 | $32,500.00 |
| **Median** | **$89,500.00** | **$80,000.00** | **$122,866.42** | **$50,000.00** |
| **3rd Quartile** | $125,000.00 | $107,987.07 | $162,000.60 | $75,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 270 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $30,000.00 to $215,000.00, with $87,000.00 as the median amount. Only ten of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion, and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs*., No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs*., 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## V. Relevant Medical History

On September 24, 2020, Petitioner received a flu vaccine. Ex. 1 at 1. She had no prior history of shoulder pain or issues. A little less than three months later (December 15, 2020), she saw her primary care provider for an annual exam. Ex. 4 at 5. She reported left shoulder pain "since her flu shot a couple months ago." *Id.* She also stated she was working out five days a week and weight training. *Id.* at 5-8.

Almost three more months passed before Petitioner again sought treatment for her shoulder issues. On March 2, 2021, she went to an orthopedist complaining of pain and stiffness in her left shoulder. Ex. 3 at 14. Petitioner reported she received the flu vaccine in September, and "it was a week or 2 later when she started having the pain and stiffness of the shoulder." *Id.* The pain was described as intermittent, but "getting worse", and that it "gets up to about 6/10." *Id.* An examination showed reduced range of motion and positive Hawkins sign. *Id.* Petitioner was diagnosed with adhesive capsulitis, referred to physical therapy, and prescribed Mobic. *Id.*

At a follow-up on March 30, 2021, Petitioner reported pain "since September" that was "possibly" related to the flu vaccine. Ex. 3 at 10. Her symptoms had not changed, and a physical exam yielded results similar to the March 2nd examination. *Id.* An examination described her range of motion as limited, "maybe 110 degrees of flexion, abduction 90, but very painful." *Id.* No other medical records were filed in this matter relevant to the claim.

## VI. Petitioner's Declarations

Petitioner submitted two sworn declarations in support of her petition. Ex. 2, 5. In the first, signed on December 12, 2021) she explained that she felt pain when the vaccine was administered, and "the following day, my shoulder pain continued to increase in intensity." Ex. 2 at 2. She also described how her injury affected her daily life, stating she has "ongoing pain, suffering, discomfort, and decreased range of motion in [her] shoulder." *Id.* Her second witness statement (signed on December 19, 2023) reiterates the contention that her shoulder pain began the day of her vaccination, which she thought "would go away on its own eventually". Ex. 5 at 2. She stated that while her pain is not constant, it "is ongoing" and continues to affect her sleeping. *Id.* at 3, 4.

## VII. The Parties' Arguments

Petitioner requests $45,000.00 for pain and suffering. Mot. at 24-25; Reply at 12-13. She emphasizes that her treatment consisted of multiple orthopedic evaluations, included anti-inflammatory medications, and that she continues to experience pain affecting her daily activities and sleep. Reply at 3. Petitioner cites to cases awarding $45,000 to $55,000 for pain and suffering. *Mejias v. Sec'y of Health & Hum. Servs.*, No. 19-1944V, 2021 WL 5895622 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (awarding $45,000 for pain and suffering); *Welch v. Sec'y of Health & Hum. Servs.*, No. 18-660V, 2021 WL 4612654 (Fed. Cl. Spec. Mstr. Sept. 2, 2021) (awarding $55,000 for pain and suffering); *Couch v. HHS*, No. 20 1246V, 2022 WL 4453921 (Fed. Cl. Spec. Mstr. Aug. 24, 2022) (awarding $55,000 for pain and suffering); *Johnson v. Sec'y of Health & Hum. Servs.*, No. 19-1543V, 2023 WL 3580142 (Fed. Cl. Spec. Mstr. May 22, 2023) (awarding $50,000 for pain and suffering).

Respondent argues that "a lower amount of pain and suffering than the lowest reasoned pain and suffering awards is warranted here." Resp. at 8. He contends that Ms. Cantrell received very limited treatment, consisting of just prescription and over-the-counter pain medications, and she quickly recovered from her shoulder injury, concluding her treatment just six months after vaccination. Resp. at 8.

## VIII. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the

medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

The record establishes that Ms. Cantrell treated on three separate occasions over approximately six months. At the first appointment (on December 15, 2020, occurring approximately three months after her September flu vaccine), it was noted that her pain started shortly after her vaccination. Ex. 4 at 5. Three months later, in March 2021, she again complained of shoulder pain, stating it was "getting worse" and was rated as 6/10 at its most severe. Ex. 3 at 14. At her last follow-up appointment on March 30, 2021, there was no change to her shoulder condition, but her provider noted the shoulder exam was "very painful" when it showed limited range of motion. *Id.* at 10. However, she did not seek further medical care or attend any of the prescribed physical therapy.

Overall, this injury was relatively minor for a SIRVA in terms of pain as well as duration and degree of treatment. Petitioner sought formal care only three times, with the last being just six months after vaccination. While pain and suffering calculations should not be based solely on the amount of medical record evidence corroborating treatment, they are nevertheless highly relevant to that analysis. The fact that a person sought – or did not seek – medical treatment for an injury provides useful information about the extent and severity of the injury, and the impact it is having on their life.

At the same time, witness statements also bear on pain and suffering. And I find that Petitioner's declarations provide useful, subjective information about Petitioner's shoulder pain and how it impacted her life. However, those documents were signed after her last treatment, and the claim that her pain still persisted at that time is uncorroborated by other evidence.[11] The record does not demonstrate that it is more likely than not that Petitioner's shoulder pain continued much, if any, beyond six months.

The overall severity of the injury at issue herein is thus not high enough to warrant the $45,000.00 requested. The SIRVA cases cited by Petitioner involved shorter delays before seeking care, more significant treatment, and longer periods of documented pain. For example, the J*ohnson* petitioner (awarding $50,000.00 pain and suffering) reported shoulder pain two days after vaccination, and treated with acupuncture, physical therapy, and prescription medication for approximately two years. 2023 WL 3580142 at *8-9. Additionally, the *Mejias* petitioner (awarding $45,000.000 for pain and suffering) first reported pain two days after vaccination, and his treatment consisted of one lidocaine patch and over the-counter pain medications over an eleven-month period. 2021 WL

[11] Petitioner's second declaration was signed on December 19, 2023, over two years since her last treatment on March 30, 2021. Ex. 5 at 4; Ex. 3 at 10.

5895622 at *6. Here, Ms. Cantrell waited nearly three months to report shoulder pain, and only treated for six months.

I find *Valdez v. Sec'y of Health & Hum. Servs.*, No. 21-0394V, 2024 WL 1526536, at *8 (Fed. Cl. Feb. 28, 2024), *abrogated by Chu v. Sec'y of Health & Hum. Servs.*, 180 Fed. Cl. 37 (2026) a better comparison. Like the *Valdez* petitioner, Ms. Cantrell did not seek care immediately, and neither petitioner underwent an MRI or cortisone injections. The *Valdez* petitioner received prescription medicines, did not attend physical therapy, and treated for a relatively brief period (seven months).

Balancing the severity of Petitioner's SIRVA injury, the course of treatment, and based on the record as a whole, I find that **$35,000.00** for actual pain and suffering is reasonable and appropriate in this case.

## Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $35,000.00 to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of Court is directed to enter judgment in accordance with this Decision. [12]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.